---

BUSSING (GILBERT & BARKER MANUF'G CO. v.). See Case No. 5,416.

BUSTEED, The RICHARD. See Case No. 11,764.

---

## Case No. 2,232.

### The BUSY.

[2 Curt. 586.] [1]

Circuit Court, D. Rhode Island. June Term, 1856.

CUSTOMS DUTIES—FORFEITURE — SUPPRESSION OF EVIDENCE—CARGO NOT ENTERED ON MANIFEST.

1. If a claimant of property seized for a breach of the revenue laws, fails to produce in the district court, material evidence, which he shows no cause for having kept back, it will be looked on with suspicion in this court.

2. Where it was proved satisfactorily, that the master had a considerable quantity of cigars on board, in a voyage from a port in Cuba, to Providence, Rhode Island, and none were entered on the manifest, and no account given of the quantity of those purchased in Cuba, or their price, and the evidence was sufficient to cast the burden of proof on the claimant, under the seventy-first section of the collection act of March 2, 1799 (1 Stat. 678), it was held that his failure to produce evidence of what he bought and put on board in Cuba, was, in a balanced case, cause for condemnation.

[Appeal from the district court of the United States for the district of Rhode Island.]

In admiralty.

Mr. Brown, Dist. Atty., for the United States.

Blake & Hazard, contra.

CURTIS, Circuit Justice. This is a libel of information for the forfeiture of the brig Busy, for a violation of the 50th section of the collection act of 1799 (1 Stat. 665), by landing merchandise imported from Cuba, of four hundred dollars' value without a permit. The district court pronounced for the forfeiture [case unreported], and the claimants appealed. After an attentive perusal of the evidence, and a careful consideration of the case, I am of opinion that the decree of the district court must be affirmed.

I do not deem it needful to go into minute statements of the evidence, but I shall indicate the substantial grounds on which my decree rests. The brig Busy, bound from Mariel, in the island of Cuba, to Providence, in the district of Rhode Island, with a manifested cargo of molasses, arrived within the limits of the collection district of the port of Providence, on the ninth day of May, 1853, was boarded by a pilot, and under his charge was proceeding up the bay, when she was approached by a sail boat, on board of which

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

were two men and two women. The sail boat came along-side the brig, was made fast, the two men and two women went on board, and after remaining a short time the men re-entered the boat, and preceded the brig up to the town. The women remained on board the brig. The pilot swears that from eight to ten boxes, about three feet by four, were discharged from the brig into the sail boat, and taken away by the latter. The cook of the brig testifies that some boxes, he is not sure of the number, were taken on board at Mariel; that during the passage he saw one of them opened—it contained cigars, and the captain placed them, or part of them, in a canvas bag; that he saw some of these boxes put into the sail boat. A foremast hand testifies he saw some boxes brought on board at Mariel. During the passage one of them was brought on deck empty. He broke it up for firewood, and it smelled as if it had contained tobacco. These boxes he saw put into the sail boat, and he assisted in passing some of them on deck. He does not speak definitely of their size or number. There can be no rooom for doubt that under the seventy-first section of this collection act, this evidence imposes on the claimants the burden of proof. Locke v. U. S., 7 Cranch [11 U. S.] 339; Wood v. U. S., 16 Pet. [41 U. S.] 342; Clifton v. U. S., 4 How. [45 U. S.] 242; Taylor v. U. S., 3 How. [44 U. S.] 197. This evidence not only warrants suspicion, but is enough, if not overcome and controlled, to require condemnation, provided the value of the merchandise appears to be sufficient.

To sustain the burden of proof thus cast upon them, the claimants have produced the testimony of the first and second officers of the brig, of the four persons who came in the boat, and of another man who boarded the brig from another sail boat, while the one first mentioned was lying along-side the brig. I have carefully perused this evidence, and after an attentive consideration of it I find it is possible that it may be true; and yet the positive testimony of the three witnesses for the government may also be true. It is wholly of a negative character, and some of it is attended with circumstances and accompanied by admissions, which greatly detract from its weight. The two female witnesses who went into the cabin on their arrival on board, and remained there most of the time, simply prove that they did not observe, or did not remember any thing about the transshipment of boxes. The first officer was under arrest for being concerned in this offence, when he testified. The substance of his evidence is, that he was at the wheel, and has no knowledge of any such boxes as the government's witnesses describe. He also swears he knew nothing of any cigars being on board. The testimony of the second officer was not taken till after the decree in the district court, and no cause is shown for the delay. This is a circumstance

which throws some suspicion over the case, especially when it is added, that the claimants also failed to take the testimony of Talbot and Robinson, the two men who sailed the boat, until after the vessel had been condemned in the district court. It imposes on the court the duty of scrutinizing their evidence with much care, to see whether it gives indications which account for its having been kept back, and only reluctantly produced when an urgent necessity was felt to attempt to relieve the case. Cushman v. Ryan [Case No. 3,515]. The second officer denies all knowledge of such boxes as are described, but admits there were cigars on board. To use his own expression, "there were cigars kicking round there." Robinson and Talbot say they saw no cigars, and so far as they knew, none were brought up to town by their boat. They say also, that they saw no boxes taken on board the boat, and they saw none in the boat. But when the direct question is put to Robinson, Can you swear there were no boxes in said cuddy on the passage from the brig to the city? he answered, I cannot. I do not perceive how these statements can be reconciled, but upon the supposition that, though boxes were on board, they were covered from sight, so that these witnesses felt at liberty to declare they did not know boxes were there. And, considering their position and relation to this transaction, there is an absence of frankness and fulness of statement, and a cautious restriction to positive knowledge, which leave their evidence open to the remark, that what they testify may be literally true; but that they were designedly ignorant, or perhaps designedly kept in ignorance, of facts which other witnesses knew.

I do not attach much importance to the testimony of the person who was there with the other sail boat. He certainly would give us to understand, that he was exceedingly vigilant; but he had no occasion to enter into any such inspection of the sail boat, or to remember what he saw on board, as would enable him to disprove positive evidence simply by his negative statements. Much reliance has been placed upon the size of the sail boat, and the impracticability of storing eight to ten boxes, of the size spoken of by the pilot, on board this boat, without their being conspicuous. If the precise size and number of the boxes be taken to be fixed facts, this would afford some grounds for such a conclusion. But no witness professes to speak with precision as to the size of the boxes; and though the pilot says he thinks he counted nine boxes, he does not undertake to speak with certainty respecting the number; and the other witnesses are still less positive respecting either of these particulars. It is insisted also, that there was not room in the cabin to stow these boxes, and that the mates swear they were not there during the voyage. This may be so. But no witness says they were kept in the cabin during the

voyage. Whether they could have been stowed in the run, under the cabin floor, or whether there was any opening in the bulkhead, between the cabin and the hold, does not appear.

I consider the attempt made to impeach the general character of Holmes for truth and veracity, not successful. It is shown that he had some unfriendly feelings towards the captain, which detracts something from the weight of his evidence. The same is true of the pilot, who was undoubtedly induced to complain, by the fact that he differed with the captain concerning his pilotage fees. No previous concert between him and the other two witnesses is shown; nor is there any cause to suspect any. That the pilot should have made this complaint, actuated by a desire of revenge, with no probable cause to base it on, and with the knowledge that if false, its falsehood must be effectually exposed, is to my mind improbable. But, in considering this case, I have not felt at liberty to rest my judgment merely on this comparison of the testimony. If it rested on this alone, the case would not be free from difficulty. For though there is positive evidence of three witnesses, who must be perjured if no boxes were transshipped into the sail boat, and only negative evidence on the other side, yet two of the three positive witnesses are not free from exception, and the negative evidence comes from those who might, and probably did know of the transshipment, if it took place. But the case does not depend solely on this conflicting evidence. The cook swears he saw a box opened by the master, on the passage, and cigars taken therefrom and placed in a canvas bag. There is no evidence in the case which conflicts with this statement, and the second officer confirms it in the manner already quoted. Yet no cigars were found on board the vessel when it was seized, on the day after she was entered, and none were placed on the manifest, even as ship's stores. When and where were they landed? What quantity was purchased in Cuba? To these questions the evidence on the part of the claimant should have afforded some satisfactory answer. None is attempted.

In Clifton v. U. S., 4 How. [45 U. S.] 242, it was held that where the claimant had the burden of proof imposed on him under the 71st section of the collection act, it was proper to instruct the jury, that the failure of the claimant to produce the evidence of his accounts and transactions with the parties abroad from whom he purchased the goods, authorized the presumption, that if produced, they would operate unfavorably on his case. I consider it proved that the master had cigars on board purchased in Cuba. If there was but a single box, as the claimant's counsel asserts, it is presumable the master had a bill of parcels of it, and could have produced it, and by the aid of a commission, to which he was entitled, could have verified it, and shown that no more were thus bought. It is because such sources of proof are known to, and in the control of the claimant, and in the ordinary course of business sufficient for the protection of honest men, that the law imposes the burden of proof on the claimant where a case of suspicion is made. And when the evidence on the part of the government carries the case much beyond one of suspicion, and upon all the proofs produced, the court can only say it is a balanced case, then the burden which is on the claimants, and their failure to produce proofs which could not but have had an important influence, and which were under their exclusive control, must decide it against them.

As to the value of the merchandise, I consider the onus probandi to be on the claimants, and they have offered no evidence to meet that produced by the government. The 50th section of the collection act requires the court to rate the goods at the highest market price of such merchandise. The testimony of Mr. Huntoon, a tobacco dealer in Providence, fixes the price at least as high as twenty dollars a thousand. Twenty thousand, at this price, would amount to $400 value. And the same witness, who speaks from his knowledge of the subject gained in his trade, proves that five boxes, of half the size mentioned by the pilot, would contain that quantity.

The decree of the district court is affirmed, with costs.